IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EVOLVE COMPOSITES, INC. and
POLYSLAB INTERNATIONAL PTY.
LTD.,

       Plaintiff,

v.

DIVERSITECH CORPORATION,

       Defendant.

CIVIL ACTION NO.
1:12-cv-02028-JEC

## ORDER AND OPINION

This case is before the Court on defendant's Motion to Stay Pending Reexamination [11].  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's Motion to Stay [11] should be **GRANTED.**

## BACKGROUND

This case alleging patent infringement was brought by the plaintiffs Evolve Composites, Inc. and Polyslab International Pty. Ltd. (together, "Evolve") on June 12, 2012.  Evolve alleges that the defendant's equipment pads infringe U.S. Patent No. 8,152,129 (the "'129 Patent"), specifically claim 12 of the '129 patent.  (Compl. [1] at ¶ 16.)

On August 6, 2012, the defendants filed an *inter partes* Request

for Reexamination to the United States Patent and Trademark Office ("PTO"). (Def.'s Mot. to Stay [11] at Ex. E.) In their Request, Diversitech asserts that all of the claims in the '129 are either anticipated under 35 U.S.C. § 102(b) or obvious under 35 U.S.C. § 103(a). (*Id.*)

On September 25, 2012, the PTO granted Diversitech's request for reexamination on Claims 1-6, 11, and 12 of the '129 Patent.[1] (Def.'s Supplemental Filing [16] at Ex. A.) The PTO rejected the request for claims 7-10 of the '129 Patent. (*Id.*) On the same date, the PTO issued an Office Action rejecting claims 1, 11, and 12 of the '129 Patent as anticipated by the prior art and rejecting claims 2-6 as obvious in view of the prior art. (*Id.* at Ex. B.)

There is a related matter, also in this Court, in which Diversitech alleges that Evolve's Polyslab® equipment pads infringe U.S. Patent No. 7,891,635, which is held by Diversitech. (Pls.' Resp. [14] at Ex. A.) In that case (the "'635 Patent Action"), the Court appointed a Special Master to conduct *Markman* proceedings. The Special Master heard oral arguments at a *Markman* hearing and issued

---

[1]    Diversitech originally made their request for reexamination under the old standard, which required the request to raise a "substantial new question of patentability." The Leahy-Smith America Invents Act that went into effect on September 16, 2011 now requires a higher standard for a reexamination to be granted: that there is a reasonable likelihood that the requester will prevail. 35 U.S.C. § 314. However, the PTO still found that the request reached this heightened burden when the request for reexamination was granted.

2

his report and recommendation regarding claim construction on July 18, 2012.  The parties have filed their objections and this Court's decision on the Special Master's Report is pending.

## DISCUSSION

### I.   LEGAL STANDARD

*Inter partes* reexamination allows a person who is not the owner of a patent to petition the PTO to cancel or amend one or more claims of a patent.  35 U.S.C. § 311.  However, the PTO will not review all issues of patentability, but only those issues under 35 U.S.C. §§ 102 and 103.  *Id.*  Essentially, "reexamination allows the PTO to reconsider the validity of an existing patent."  *Tomco Equip. Co. v. Se. Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1306 (N.D. Ga. 2008). Congress permits reexaminations to provide a "quality check" on patents and to allow the government to remove erroneously granted patents.  *In re Swanson*, 540 F.3d 1368, 1375 (Fed. Cir. 2008).  The petitioner in an *inter partes* review is bound by the decision of the PTO and may not assert that a "claim is invalid on any ground that the petitioner raised or reasonably could have raised during [the] inter partes review."  35 U.S.C. § 315(e)(2).

These rules dovetail with the goal of reexamination, which is to "permit [the] efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation."  *Graywire, LLC v. Ciena Corp.*, Civil Action File No.

3

1:08-CV-2993-BBM, 2009 WL 8590870, at *2 (N.D. Ga.  July 17, 2009) (Martin, J.)(citing H.R. Rep. No. 96-1307(I), at 3-4 (1980)).  A well-recognized purpose of "the reexamination procedure is to eliminate trial of [an] issue (when the claim is canceled) or to facilitate trial of [an] issue by providing the district court with the expert view of the PTO (when [the] claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983).  The Eastern District of Texas succinctly outlined the other benefits that reexamination provides:

1.   All prior art presented to the Court will have been first considered by the PTO, with its particular expertise;

2.   Many discovery problems relating to prior art can be alleviated by the PTO examination;

3.   In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed;

4.   The outcome of the reexamination may encourage a settlement without the further use of the Court;

5.   The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation;

6.   Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination; and

7.   The cost will likely be reduced both for the parties and the Court.

*Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006)(quoting *Fisher Controls Co., Inc. v. Control Components, Inc.*, 443 F. Supp. 581, 582 (S.D. Iowa 1977).

The Supreme Court has long recognized district courts' ability and broad discretion to manage their dockets, including the power to grant a stay of proceedings. *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008)(citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). However, as many courts and the parties point out, reexamination can be a lengthy process that may take several years to complete. Reexamination is also limited to certain issues of patentability so litigation may be necessary regardless of the PTO's reexamination of the patent.

Because of these potential pitfalls, courts deciding whether to grant a stay pending a PTO reexamination generally consider three factors. *See Tomco Equip. Co.*, 542 F. Supp. 2d at 1307; *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406-7 (W.D.N.Y. 1999). Courts look to (1) whether a stay would unduly prejudice or present a tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues of the case; and (3) the stage of the litigation. *Xerox Corp.*, 69 F. Supp. 2d at 406-7.

5

## II.  <u>ANALYSIS OF FACTORS</u>

The Court now addresses each factor in determining whether to grant the stay.

A.  <u>Undue Prejudice And Tactical Advantage</u>

The plaintiffs contend that a stay would be prejudicial because reexamination through the PTO could potentially exceed three years, which delay prevents them from vindicating their patent rights, as well as hinders their ability to prosecute the infringement claims later because of the faded memories of witnesses and evidence that is potentially lost.  (Pls.' Resp. [14].)  The parties are also direct competitors and thus the potential for irreparable harm to the plaintiff is higher.  (*Id.*)

The plaintiffs are correct in their assertion that district courts recognize that the potential for prejudice to a patent holder increases when the alleged infringer is a direct competitor.  *See e.g. ADA Solutions, Inc. v. Engineered Plastics, Inc*., 826 F. Supp. 2d 348 (D. Mass. 2011); *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010)(Stark, J.); *Wyeth v. Abbott Labs*., Civil Action No. 09-4850 (JAP), 2011 WL 380902 (D.N.J. Feb. 1, 2011)(Pisano, J.).  However, the litigants' status as a direct competitor does not mandate the denial of a stay.  *See Xpedite Sys., LLC v. J2 Global Commc'n, Inc.,* Civil Action No. 1:11-CV-0706-RWS, 2011 WL 6712766 (N.D. Ga. Dec. 21, 2011)(Story,

6

J.); *Tomco Equip. Co.*, 542 F. Supp. 2d 1303.

Significantly to this analysis, plaintiffs fail to allege any specific facts about how they will be adversely affected by the delay or how the direct competition harms them. Instead, they simply cite cases where other district courts, whose precedent is not binding on this Court, declined to grant a stay pending reexamination where the parties were direct competitors. The cited cases, however, are largely distinguishable from the present case based on the other two factors that courts consider.[2]

---

[2]  In *ADA Solutions Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d at 351, the defendants asserted a "myriad [of] federal and state counterclaims," so the reexamination would have done nothing to simplify these other claims. Further, some discovery had already been taken and a trial date had been set.

In *Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351, the patent-holder expressly represented to the court that it would not amend any of its claims during the reexamination and the court had already invested much time in setting a scheduling order and date of the trial. The court also questioned the tactical motives of the defendants, who had waited ten months after the complaint was filed to file for reexamination.

In *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, No. 2:12-CV-00840, 2012 WL 3527938 (W.D. Wash. Aug. 14, 2012)(Lasnik, J.), the PTO granted reexamination of two of the claims being asserted, but denied reexamination of two others, so the court would have necessarily needed to conduct a trial on those claims anyway.

In *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, Civil Action No. 09-5142 (GEB-ES), 2011 WL 487574 (N.D.J. Feb. 7, 2011)(Brown, C.J.), discovery had already been completed, the trial date had been set, and the movant had waited between 8 and 15 months to file reexamination requests for the various patents being asserted.

7

Courts must also take in to account any tactical advantage a stay pending reexamination might give a party.  Recognizing that a request for reexamination may be used as a stall technique, courts are often wary when a party petitions for reexamination long after the suit has been filed.  *See, e.g. LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 487574 (denying stay after movant waited between 8 and 15 months to file a reexamination request with the PTO on the various patents being asserted); *Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635 SBA, 2009 WL 3078463 (N.D. Cal. Sept. 28, 2009)(Armstrong, J.)(denying stay and specifically expressing concern that defendant, which waited over six months to file reexamination request, had only filed the request after failed attempts to license the patent from the plaintiff).

Unlike these cases, the defendant here filed its reexamination request less than two months after the complaint was served. Considering the complexity of preparing an *inter partes* reexamination request, it seems unlikely that the defendant delayed the filing of its reexamination request to give itself a tactical advantage, nor

---

In *Life Technologies Corp.* v. *Illumina, Inc.*, Civil Action No. 09-706-RK, 2010 WL 2348737 (D. Del. June 7, 2010)(Kelly, J.), the court refused to grant a stay on the defendant's counterclaims because it would still be proceeding as to plaintiff's claims and considerable discovery had taken place.

does the short delay provide defendant with such an advantage.[3]

Finally, prejudice may also arise when there are other claims unrelated to the reexamination pending that will also be put on hold if the stay is granted. This is not an issue in the instant case. A single claim of the '129 Patent is being asserted in this case and the PTO has not only granted reexamination as to that claim, but has initially rejected it in light of the prior art. (Def.'s Supplemental Filing [16] at Ex. B.)

In short, as to prejudice, the Court finds this factor to be either neutral or weighing only slightly in favor of denying the defendant's motion for a stay.

B.   <u>Simplification Of Issues</u>

Diversitech argues that the reexamination will greatly simply the issues for trial since the PTO granted reexamination of the single claim being asserted. At the end of reexamination, the claim will either be cancelled, amended, or confirmed. As to this

---

[3] Defendant Diversitech argues that the related matter, the '635 Patent Action, abates any prejudice the plaintiffs may experience. Defendant asserts that the extensive discovery and depositions taken in the '635 Patent Action will preserve any evidence that may be lost with the passage of time. (Def.'s Mot. to Stay [11].) The Court is unpersuaded by this particular argument. As Evolve points out, the discovery and depositions taken in the '635 Patent Action concern that patent, and not the '129 Patent. While there could be some overlapping evidence preserved by the related action, the defendants go too far in asserting that the related action negates any potential harm to Evolve.

9

argument, both sides spend much time in their briefs discussing the rates at which the PTO cancels, amends or confirms claims during reexamination.  By both accounts, a high probability exists that the claims will be either amended or cancelled.[4]  Cancellation of a claim obviously simplifies the issues to be tried as the case will be rendered moot.  Even if the claim is not canceled, however, an affirmation or amendment will greatly assist the Court in its infringement determination.  The Court will not have to consider any of the prior art considered by the PTO during reexamination and will have guidance from the experts at the PTO regarding the scope of the claims, including claim 12: the single claim being asserted.

Evolve argues that a stay would not simplify the issues in the case because a reexamination will only address two grounds for invalidity, while Diversitech contends invalidity on five additional grounds, as well as alleging that Evolve's claims are barred by prosecution history estoppel and patent misuse.  Although the plaintiffs are correct that the reexamination will not necessarily simplify *all* the issues, it does not follow that reexamination will not simply issues for trial.  As noted above, although there still

---

[4]  Defendant Diversitech cites statistics from September 2009 to September 2010 to show that 84% of claims were amended or cancelled. (Def.'s Reply in Support of Mot. to Stay [15].)  Evolve uses *Wyeth* to show that 24% of reexamined claims are cancelled, but conspicuously makes no mention about the rate that claims are amended.

10

may need to be a trial after reexamination, the scope of the claims will be more easily and accurately determined in light of the PTO's findings.

Further, the cases cited by Evolve are distinguishable. In *Cooper Notification, Inc.,* 2010 WL 5149351, the parties had already completed their *Markman* briefings and the court had heard oral arguments on claim construction. *Id.* at, *3. Thus, the PTO's determination of the scope of many of the asserted claims would have been less useful to the court. *Id.* In *Esco Corp.,* 2009 WL 3078463, the PTO did reject many of the claims of one of the patents being asserted, but confirmed the claims in the other patents being asserted. Therefore, a full trial of issues would have been required due to the confirmed patent claims, regardless of the outcome of a reexamination.

Here, the PTO has not only granted the reexamination of the single claim being asserted, but has initially rejected it as being anticipated by the prior art. (Def.'s Supplemental Filing [16] at Ex. B.) It is likely that the claim will be canceled or amended during the reexamination process, but even if the PTO confirms the claim without amendment, the findings by the PTO will be extremely helpful to the Court when determining the scope of the '129 Patent and whether it covers the accused equipment pad. For these reasons, this factor weighs heavily in support of granting the stay.

11

C.    Stage Of Litigation

The final factor that courts consider when determining whether or not to grant a stay is stage of the litigation.  Where a case is in the early stage of litigation, this factor weighs in favor of a stay.  *See Graywire, LLC*, 2009 WL 8590870, at *6; *Tomco Equip. Co.*, 542 F. Supp. 2d at 1311-12.

Both parties agree that this litigation is in its early stages, as no deadlines have been set nor any discovery taken.  (Pls.' Resp. [14].)  Evolve believes that even though this action is in its earliest stages, a stay should be denied because of the related suit in the '635 Patent Action.  (*Id.*)  Evolve argues that granting a stay would prevent any coordination between the cases.[5]  The Court concludes that the early stage of litigation means that the parties have not invested much time, money or effort thus far, and therefore somewhat favors a stay.  That said, should the need arise in the related '635 Patent Action to wait for, or coordinate with, the present stayed action, either party may make that request.

D.    Summary

In short, the Court finds a stay to be appropriate.  Although there is always some possibility of prejudice when a case is stayed,

---

[5]    Evolve makes this argument even though earlier in its briefing, it had argued that the two cases were not related enough to help preserve any evidence that Evolve might ultimately need in an action on the merits.

12

the PTO's preliminary conclusions in this case suggest that reexamination may greatly simplify the issues here. Further, continuing on with this case while reexamination is occurring would likely result in the Court performing duplicative work and could result in conflicting determinations by the undersigned and the PTO examiner. These considerations outweigh the factors asserted by Evolve in opposition to a stay.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court **GRANTS** defendant's Motion to Stay the Proceedings Pending Reexamination [11]. The Clerk shall **ADMINISTRATIVELY TERMINATE** this action. Either party may reopen the action within sixty (60) days of a determination by the United States Patent and Trademark office or earlier, for good cause shown.

SO ORDERED, this <u>11th</u> day of MARCH, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

13